[L.A. No. 29655. In Bank. Oct. 31, 1969.]

EARL LARSEN KESLER, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Herbert Davis, Deputy Attorney General for Defendant and Appellant.

Hyman Gold for Plaintiff and Respondent.

## OPINION

**BURKE, J.**—The Department of Motor Vehicles (Department) appeals from a judgment of the Superior Court of Los Angeles County granting a peremptory writ of mandate to vacate an order suspending respondent's driver's license. We have concluded that the order of the Department was correct and the judgment of the superior court should be reversed.

Respondent was lawfully arrested for driving while under the influence of intoxicating liquor. Pursuant to Vehicle Code section 13353,[1] respondent was informed by the arresting officer "that he had a choice of three chemical tests and that he should submit to one or the other, and that a denial or negative reply constituted a refusal to take a test." Respondent was further advised that if he refused to take a test, his driver's license would be suspended. However, respondent refused to submit to only a single test, stating that he wanted to take all three tests in order to obtain an "average" of these tests. Respondent told the arresting officer that a single test would not be "scientifically conclusive."

The arresting officer then informed respondent that under the law he had a choice of one of three tests, but not all three as a choice, and that his continued insistence upon all three tests would be treated as a refusal to submit to a test. Respondent remained adamant, and the arresting officer prepared an affidavit of refusal pursuant to section 13353.

Acting upon the affidavit, the Department of Motor Vehicles suspended respondent's license for a period of six months. The superior court granted respondent's petition for writ of mandate on the grounds that respondent's request to take all three tests did not constitute a refusal to submit to a test under section 13353, and that respondent should have been advised by the

---

[1]Section 13353 provides in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine.

"   .   .   .   .   .   .   .   .   .   .   .   .   .

"(b) If any such person refuses the officer's request to submit to a chemical test, the department, upon receipt of the officer's sworn statement that he had reasonable cause to believe such person had been driving a motor vehicle upon a highway while under the influence of intoxicating liquor and that the person had refused to submit to the test after being requested by the officer, shall suspend his privilege to operate a motor vehicle for a period of six months."

arresting officer that respondent had the right, under Vehicle Code section 13354, subdivision (b),[2] to obtain an additional test at his own expense.

In order to resolve this matter, we must decide two separate issues: first, whether respondent's insistence upon all three tests constituted, in legal effect, a refusal to submit to a test within the meaning of section 13353 and second, if it did constitute such a refusal, whether or not that refusal may be excused by reason of the failure to advise respondent of his right to obtain an additional test at his own expense.

■ We have concluded that section 13353 neither expressly nor by necessary implication permits one to insist that all three tests be administered to him at the state's expense. Section 13353 refers to the administration of "a chemical test," and states quite clearly "The person arrested shall have the choice of whether the test shall be of his blood, breath *or* urine." (Italics added.) Had the Legislature intended to permit a choice of more than one test, we believe that it would have expressly so provided.

■ A court should interpret legislation reasonably and should attempt to give effect to the apparent purpose of the statute. ■ Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. (*People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *Zidell* v. *Bright,* 264 Cal.App.2d 867 [71 Cal.Rptr. 111].) The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range purpose is, of course, to inhibit intoxicated persons from driving on the highways. (*Zidell* v. *Bright, supra,* at pp. 869-870.)

■ Whether the purposes of the implied consent statute would be more fairly, efficiently or accurately attained by the revision of ·section 13353 to permit a choice of all three tests instead of only one is a matter for the Legislature. As the section now reads provision is made only for a choice of one of three tests. Consequently, we hold that respondent's insistence upon taking all three rather than only one constituted, at best, a conditional consent to a test which, under the authorities, must be deemed to be a refusal to submit to a test within the meaning of section 13353 and similar to the conditions held to nullify the consent in *Finley* v. *Orr,* 262 Cal.App.2d 656, 667 [69 Cal.Rptr. 137] (that licensee's physician or

---

[2]Section 13354, subdivision (b) provides: "(b) The person tested may, at his own expense, have a physician, registered nurse, duly licensed clinical laboratory technologist or clinical laboratory bioanalyst or any other person of his own choosing administer a test, in addition to any administered at the direction of a peace officer, for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood, breath or urine. The failure or inability to obtain an additional test by a person shall not preclude the admissibility in evidence of the test taken at the direction of a peace officer."

attorney be present during the test); *Fallis* v. *Department of Motor Vehicles,* 264 Cal.App.2d 373, 382 [70 Cal.Rptr. 595] (that licensee's physician administer the test); *Ent* v. *Department of Motor Vehicles,* 265 Cal.App.2d 936 [71 Cal.Rptr. 726] (that licensee's attorney be present during test); *Westmoreland* v. *Chapman,* 268 Cal.App.2d 1 [75 Cal.Rptr. 363] (that licensee's physician be present during, or administer the test).

The instant case is to be distinguished from *James* v. *Department of Motor Vehicles,* 267 Cal.App.2d 750 [73 Cal.Rptr. 452], wherein the arrested driver indicated his willingness to take any test administered to him, but simply refused to select a particular test to take. In *James,* the Court of Appeal held that given a willingness to submit to a test, a mere refusal to indicate a choice did not constitute a refusal to take a test under section 13353. This result seems proper, as section 13353 does not by its terms require the arrested person to select a particular test himself. In the instant case, respondent refused to take only a single test and instead insisted upon taking all three, a right not conferred upon him under section 13353.

Nor does *Rust* v. *Department of Motor Vehicles,* 267 Cal.App.2d 545 [73 Cal.Rptr. 366], improve respondent's position. In *Rust,* the arresting officer gave the driver an overly broad *Miranda* warning concerning his right to counsel, without explaining its inapplicability to the blood alcohol test. Since the driver may have been misled by the officer, the Court of Appeal held that the driver's insistence upon calling his attorney before the test was given did not constitute a refusal to submit to a test under section 13353. There is no indication in the record before us that respondent herein was similarly misled regarding his rights.

■ Turning to the second question of whether or not respondent's refusal may be excused by reason of the failure of the arresting officer to advise respondent that he could obtain an additional test at his own expense, pursuant to section 13354, subdivision (b), we note that neither section 13353 nor section 13354 purports to require the arresting officer to advise the driver that an additional test is available at his expense. Other than the *Miranda* warning prior to police interrogation, section 13353, subdivision (a), specifies the only warning required to be given, namely, that the driver "be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months." Therefore, we may reasonably conclude that the Legislature did not intend to impose the further requirement that the arresting officer advise the driver of the availability of an additional test at his own expense. (Accord, *Westmoreland* v. *Chapman, supra,* 268 Cal.App.2d 1.)

Nor do we believe that principles of due process or equity require that

persons in respondent's position be advised by law enforcement officers that additional tests may be taken at their own expense. As we have previously stated in *In re Koehne,* 54 Cal.2d 757, 759 [8 Cal.Rptr. 435, 356 P.2d 179], and in *In re Newbern,* 55 Cal.2d 508, 511 [11 Cal.Rptr. 551, 360 P.2d 47], all that due process requires in the preservation of the rights of such persons is the availability of an opportunity for defendant to obtain a timely sampling of his blood in the manner required by law. Respondent was given that opportunity, and he voluntarily refused it.

In *In re Koehne, supra,* 54 Cal.2d 757, involving a person charged with being drunk in a public place and who insisted that the police denied him the right to call and obtain the services of a physician to test the alcoholic content of his blood, we stated that it is significant "that the law does not impose upon law enforcement agencies the requirement that they take the initiative, *or even any affirmative action,* in procuring the evidence deemed necessary to the defense of the accused. Rather it is the accused who must act to protect his interests, and it is only when he is denied an opportunity, reasonable under the circumstances, to procure a timely sample of his blood that he can properly claim a denial of due process." (Italics added.)

Respondent asks us to hold that law enforcement officers must indeed take the initiative and act affirmatively to advise the arrested driver that he may obtain additional tests at his own expense. Such a holding would be contrary to the principles announced by us in *Koehne* and *Newbern, supra,* and to the legislative intent necessarily implied from the face of sections 13353 and 13354.

Accordingly, we hold that respondent's refusal to submit to a chemical test to determine the alcoholic content of his blood was unjustified and in violation of section 13353 of the Vehicle Code. The judgment is reversed and the superior court is directed to make new findings and enter judgment in accordance with the views expressed herein.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

PETERS, J.—I dissent.

Even if a demand to take all three tests be interpreted as a refusal to take any, under the law he could have agreed to take one, and could have demanded the right to take the other two if he paid for them (Veh. Code, § 13354, subd. (b)). The arresting officer should have informed petitioner of that right. Petitioner had made it perfectly clear that he wanted all three tests. The only way he could get them was to pay for two. The police officer presumably knew this. He knew or should have known that petitioner did not. Fundamental rules of fairness require that the officer inform him of those rights.